**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HONORABLE STEPHEN ALEXANDER VADEN, JUDGE**

| | |
|---|---|
| NAGASE & CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>GEO SPECIALTY CHEMICALS, INC.<br><br>Defendant-Intervenor. | Court No. 21-00574 |

**DEFENDANT'S OPPOSITION TO**
**PLAINTIFF'S MOTION FOR A REFERRAL TO MEDIATION**

Pursuant to Rule 7 of the Rules of this Court, defendant, the United States, respectfully submits this opposition to Plaintiff's Motion for Referral to Court-Annexed Mediation (the Motion), filed by defendant Nagase & Co., Ltd. (Nagase).

Nagase brought this action to contest the final results of the U.S. Department of Commerce's (Commerce) first administrative review of the antidumping duty order covering glycine from Japan (Case No. A-588-878) as they relate to Nagase's glycine exports. The complaint contains three counts, all of which are routine types of challenges in these kinds of cases. Now, Nagase contends that one of the counts in the complaint alleges an error so "extreme" that mediation is required to allow the parties to explore "broaden[ed] resolution options." *See* Motion at 3, 4 (quoting the Court's Mediation Guidelines).

But mediation is extremely rare in cases challenging antidumping duty determinations. These cases are brought pursuant to 28 U.S.C. § 1581(c) and reviewed for substantial evidence on an administrative record, similar to determinations under the Administrative Procedure Act, 5 U.S.C. § 551. They do not involve discovery or other costly processes, so mediation is unlikely to result in a quicker or more efficient resolution than simply adjudicating the claims. There is nothing unusual about Nagase's claims that make this complaint any different than other 1581(c) complaints alleging a party submitted data to Commerce that it later alleges was in error. Here, Nagase failed to identify its alleged error during the administrative proceeding.

Moreover, in the particular circumstances of this case, mediation would not assist in reaching a resolution. The government has already carefully considered the issues raised in the complaint and determined that it is not willing to request a voluntary remand to address any of the claims. Accordingly, mediation would likely fail and would therefore be a waste of the Court's and the parties' resources. It will be faster and more efficient to simply brief and decide the claims on their merits, after which, if Nagase prevails, it will get the exact same remedy it seeks in the proposed mediation—a remand for Commerce to reevaluate and correct a calculation that was based upon allegedly incorrect data.

## BACKGROUND

### I. Mediation Process

Rule 16.1 of the Rules of this Court provides that a judge may refer an action for mediation at any time during the pendency of the case. A party may move for such a referral, provided they do so more than 30 days before dispositive motions are due or before trial. *Id.* If the Court grants such a motion, the matter is referred to another judge of the Court, who serves as Judge Mediator, and the mediation is governed by the USCIT Guidelines for Mediation. *Id.*

As those Guidelines explain, mediation is a "non-binding dispute resolution procedure" in which the mediator merely "serves as a facilitator and does not issue a decision or make findings of fact." *USCIT Guidelines for Court-Annexed Mediation* at 1.

As the Court explained in *Sigma-Tau Healthscience, Inc. v. United States*, 28 F. Supp. 3d 1315, 1316 (Ct. Int'l Trade 2014), "court annexed mediation, particularly if contested, is not a tool that is frequently employed in this court. Therefore, the Court conducts a benefits versus risks analysis when a motion for court annexed mediation is before it." In cases such as *United States v. Tenacious Holdings, Inc.*, 6 F.Supp.3d 1374 (Ct. Int'l Trade 2014), "a rare set of circumstances" may justify referral to mediation over the Government's objection. *Sigma-Tau Healthscience*, 28 F. Supp. 3d at 1316. The Court in *Tenacious* emphasized that the amount in dispute—$50,000—was low, and that the issue in dispute had no precedential value. *Tenacious*, 6 F.Supp.3d at 1378. Further, the parties in *Tenacious* were engaged in ongoing discovery, and had filed several motions arising from discovery disputes, such that mediation offered an opportunity to avoid costly, ongoing litigation and discovery. *Id.* at 1376. The plaintiff pointed out that the amount in controversy could be "exceeded by litigation expenses, giving the parties an incentive for early resolution." *Id.* However, where such rare circumstances are absent, the Court does not often refer cases for mediation because the risks often outweigh the benefits. *See Sigma-Tau Healthscience*, 28 F. Supp. 3d at 1316-17.

## II. Proceedings In This Case

Nagase's complaint contains three counts. Counts I and II challenge certain methodologies Commerce used during the administrative review. *See* Compl. ¶¶24-33. Nagase raised the issues in Counts I and II to Commerce after Commerce published the preliminary results of the administrative review, but Commerce did not agree with Nagase's arguments and

continued to use those methodologies in its final results of administrative review. Count III alleges that Nagase made an error when it submitted its underlying data, which resulted in a higher assessment rate than if Nagase had submitted the correct data. *Id.* ¶¶34-36. Nagase did not raise this issue after the preliminary results, though it did timely raise other arguments (see Counts I and II), but rather waited until after the final results of the administrative review were published. If this case proceeds to regular briefing before the Court, we will contend that Nagase failed to exhaust its administrative remedies on this Count, and that in any case Commerce's calculation of the assessment rate was correct based on the evidence in the record, and it therefore has no obligation to reconsider the issue.

Since the complaint was filed, the parties have conferred regarding the nature of the alleged error. Nagase has explained that it inadvertently reported the duty amounts for its CEP sales in place of the entered value amounts. According to Nagase, the duty amounts were actually only a fraction of the entered value of its exports, and this error resulted in an assessment rate of over 800%, when the correct rate would be a small fraction of that number. Without reopening the issue and analyzing the data and calculations, we cannot conclusively affirm that Nagase's allegations are true, nor would it be appropriate to do so outside the confines of an administrative process.

**ARGUMENT**

Mediation will not facilitate the resolution of this case because it cannot resolve the parties' disagreement as to whether it is appropriate for Commerce to reopen an issue to correct an error after the final results have been published, especially where Commerce was not responsible for the alleged error. This is a question for the Court. The Court must consider, first, whether it is "appropriate [to] require the exhaustion of administrative remedies" under these

circumstances. 28 U.S.C. § 2637(d). If the Court does not dismiss Count III for failure to exhaust administrative remedies, it must also determine whether Commerce's final decision was "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a (b)(1)(B)(i). These issues are unlikely to be resolved through mediation. Nagase suggests that "[i]n the mediation environment, the parties could review the record together in a non-adversarial way and agree upon methods available to correct the error, relying on evidence already on the record." Motion at 4. This argument assumes away the key point of dispute, which is whether it is appropriate for Commerce to voluntarily correct Nagase's alleged error when Nagase failed to avail itself of regulatory procedural opportunities to do so, and when Commerce's decision was an accurate and lawful determination based on the evidence in the record. Mediation will not change the parties' positions on that issue, and the mediator cannot force the Government to change its position. *See* USCIT Guidelines for Mediation at 1 (mediation is non-binding). Under these circumstances, mediation can serve no useful purpose.

Moreover, there is no benefit to mediating a case such as this, which is based on a closed administrative record and will involve no discovery. Adjudicating such a case is already a quick and efficient process, whereas mediation risks wasting the resources of the Court and the parties by requiring them to prepare mediation papers and participate in mediation sessions, only to then brief and argue their cases anyway if mediation fails. Indeed, mediation is contrary to the transparency inherent in requiring the agency to base its determinations including remands on administrative records. For these reasons, challenges to antidumping duty determinations brought under 28 U.S.C. § 1581(c) are almost never mediated.

Nagase has identified two cases where the Court did order mediation, over the Government's objection, in cases that were similarly limited to review of an administrative

record. *See* Pl. Mot. for Referral to Court-Annexed Mediation (ECF No. 27) at 2 (citing *AM/NS Calvert LLC v. United States*, CIT No. 21-00005, Order, ECF No. 56 (Sept. 15, 2021); *voestalpine High Performance Metals Corp. et. al. v. United States*, CIT No. 21-00093, Order, ECF No. 46 (Oct. 14, 2021)). However, neither of these was a routine challenge to an antidumping duty determination under 28 U.S.C. § 1581(c), as is the case here, and the circumstances of those cases were highly unusual. Those cases arose from a process, authorized by Presidential Proclamation, for Commerce to grant exclusions from Section 232 tariffs on imports of steel articles, if certain conditions were met. Parties challenged a separate Commerce bureau's denial of their requests for exclusions for particular steel products. *See AM/NS Calvert LLC*, CIT No. 21-00005, Complaint, ECF No. 2 (Jan. 8, 2021); *voestalpine*, CIT No. 21-00093 Complaint, ECF No. 2 (March 5, 2021). In the highly unusual procedural posture of those cases, Commerce had already moved for voluntary remand to address allegations of certain errors when the plaintiffs moved for referral to mediation. There were also factual disputes between the parties about the appropriate scope of remand and whether the administrative record was complete. *See, e.g.*, *AM/NS Calvert LLC*, CIT No. 21-00005, Def. Mot. for Remand, ECF No. 46 (Jul. 23, 2021), at 3-5. Nagase's complaint, however, is a routine appeal of an antidumping duty determination, where review is limited to a complete administrative record. 19 U.S.C. § 1516a(b)(1) and (2). Moreover, the Government will not move for a voluntary remand here. The most efficient path forward is for the parties to brief the issues and for the court to issue its judgment, as is almost always done in such cases.

For the same reasons, the Government does not see any advantage to the dismissal of Counts I or II of the Complaint. Because this case is limited to briefing on the administrative record, resolving those counts will not require the Government to expend significant additional

resources, and the Government would therefore prefer to obtain a decision on the merits of those counts than to bargain for their dismissal. Accordingly, although the Government would participate in mediation in good faith if ordered to do so, the Government is not willing to voluntarily reopen the issue raised in Count III in exchange for dismissal of either or both other counts, and it is therefore unlikely that the parties would reach any agreement.

Finally, the remedy Nagase seeks—a remand for Commerce to recalculate its assessment rate with (what is, in Nagase's view) the correct information, is the same remedy that this Court can provide. In fact, as the Court of Appeals for the Federal Circuit once again explained last week in *Nexteel Co., Ltd. V. United States*, No. 18-cv-00083-JCG (Fed. Cir. Mar. 11, 2022), the *only* remedy the Court may provide when reviewing an administrative review of an antidumping order, pursuant to 19 U.S.C. § 1516a(c)(3), is a "remand for further consideration consistent with its decision." *Id.* at 16 (quoting *Ad Hoc Shrimp Trade Action Comm. v. United States*, 515 F.3d 1372, 1383 (Fed. Cir. 2008)) (explaining that the Court cannot "outright revers[e] a decision by Commerce" in this context). To delay that remedy to hold mediation proceedings that will be unlikely to result in a compromise and will lack transparency seems counterproductive for all the parties and the Court.

For these reasons, we respectfully request that the Court deny Nagase's motion.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Claudia Burke
CLAUDIA BURKE
Assistant Director

/s/ Kelly M. Geddes
KELLY M. GEDDES
Trial Attorney
Commercial Litigation Branch
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-2867
Facsimile: (202) 305-2062
Email: kelly.geddes2@usdoj.gov

Attorneys for Defendant

OF COUNSEL:

MYKHAYLO GRYZLOV
Senior Counsel
Office of the Chief Counsel
for Trade Enforcement & Compliance
U.S. Department of Commerce

March 16, 2022