UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| NAGASE & CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> GEO SPECIALTY CHEMICALS, INC., <br><br> Defendant-Intervenor. | Court No. 21-00574 <br><br> **NON-CONFIDENTIAL VERSION** <br><br> **Business Proprietary Information Deleted From pages 2, 5-6.** |

**PLAINTIFF'S COMMENTS IN PARTIAL OPPOSITION TO REMAND REDETERMINATION**

White & Case LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 626-3600

Law Office of Neil Ellis PLLC
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015
(202-258-5421)

Counsel to NAGASE & Co., Ltd.

September 8, 2023

**TABLE OF CONTENTS**

Page No.

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND ....................................................................................................2

III. ARGUMENT..........................................................................................................2

    A. Commerce Cannot Use Information It Knows to Be Incorrect................................3

    B. On Remand, Commerce Knew the Entered Values for CEP Sales Were Incorrect......................................................................................................................4

    C. The Record Includes Correct Information That Commerce Could Use to Calculate NAGASE's Assessment Rate......................................................................6

    D. None of Commerce's Claims Justified Using Information Known to Be Incorrect......................................................................................................................7

IV. CONCLUSION.....................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alloy Piping Prods., Inc. v. Kanzen Tetsu Sdn. Bhd.*,
   334 F.3d 1284 (Fed. Cir. 2003)...................................................................................9

*Anshan Iron & Steel Co. v. United States*,
   27 C.I.T. 1234 ............................................................................................................3

*Anshan Iron & Steel Co. v. United States*,
   358 F. Supp. 2d 1236 (Ct. Int'l Trade 2004) .........................................................3, 7

*ATC Tires Private Ltd. v. United States*,
   324 F. Supp. 3d 1355 (Ct. Int'l Trade 2018) ............................................................4

*Borlem S.A.-Empreedimentos Industriais v. United States*,
   913 F.2d 933 (Fed. Cir. 1990)....................................................................................7

*Budd Co. Ry. Div. v. United States*,
   1 CIT 67 (1980) ......................................................................................................3, 7

*Cemex, S.A. v. United States*,
   20 C.I.T. 993 (1996),
   *aff'd*, 133 F.3d 897 (Fed. Cir. 1998)..........................................................................9

*Fujian Lianfu Forestry Co., Ltd. v. United States*,
   638 F. Supp. 2d 1325 (Ct. Int'l Trade 2009) ...........................................................8

*Hartford Fire Ins. Co. v. United States*,
   918 F. Supp. 2d 1376 (Ct. Int'l Trade 2013) ...........................................................8

*Hyundai Elecs. Indus. Co. v. United States*,
   395 F. Supp. 2d 1231 (Ct. Int'l Trade 2005) ...........................................................4

*NAGASE & Co., Ltd. v. United States*,
   628 F. Supp. 3d 1326 (Ct. Int'l Trade 2023) ...........................................................2

*Rhone Poulenc, Inc. v. United States*,
   899 F.2d 1185 (Fed. Cir. 1994)..................................................................................7

*Serampore Indus. Pvt., Ltd. v. U.S. Dep't of Commerce*,
   12 C.I.T. 825 (1988) ...................................................................................................4

*Sterling Fed. Sys., Inc. v. Goldin*,
   16 F.3d 1177 (Fed. Cir. 1994)....................................................................................8

*Torrington Co. v. United States,*
   21 CIT 1079 (1997) ................................................................................................4

*Union Camp Corp. v. United States,*
   53 F. Supp. 2d 1310 (Ct. Int'l Trade 1999) ......................................................3, 5, 7

## ADMINISTRATIVE DETERMINATIONS

*1-Hydroxyethylidene-1, 1-Diphosphonic Acid from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2016-2018,*
   84 Fed. Reg. 67925 (Dec. 12, 2019),
   and accompanying Issues & Decision Memorandum ...............................................8

*Certain Softwood Lumber Products from Canada,*
   70 Fed. Reg. 73437 (Dec. 12, 2005),
   and accompanying Issues & Decision Memorandum ...............................................8

*Chlorinated Isocyanurates from the People's Republic of China,*
   76 Fed. Reg. 70957 (Nov. 16, 2011),
   and accompanying Issues & Decision Memorandum ...............................................8

*Wooden Bedroom Furniture from the People's Republic of China,*
   72 Fed. Reg. 46957 (Aug. 22, 2007),
   and accompanying Issues & Decision Memorandum ...............................................8

**PUBLIC VERSION**

I.  **INTRODUCTION**

Plaintiff, NAGASE & CO., LTD. ("NAGASE"), submits these comments in partial opposition to the Department of Commerce's ("Commerce") Final Results of Redetermination Pursuant to Court Remand, *NAGASE & Co., Ltd. v. United States*, Slip. Op. 23-46 (CIT April 11, 2023), ECF Doc. No. 57 (Aug. 9, 2023) ("*Remand Redetermination*").  NAGASE supports Commerce's recalculation of NAGASE's general and administrative ("G&A") expense ratio after removing the compensation for payment expense.  However, NAGASE opposes Commerce's recalculation of NAGASE's assessment rate using incorrect entered value information.

The circumstances surrounding Commerce's recalculation of NAGASE's assessment rate during the remand differed fundamentally from the circumstances during the underlying annual review.  During the remand, Commerce was well aware that the entered values for the constructed export price ("CEP") sales used to calculate NAGASE's assessment rate were incorrect.  Established precedent prohibits Commerce from using information known to be incorrect.  The use of known, incorrect information is reversible error because it is not supported by substantial evidence.  During the remand, despite having knowledge that the entered values for CEP sales were incorrect, Commerce used that information to recalculate the assessment rate for NAGASE, claiming, among other things, that it was bound to do so under its "standard practice" and in the interest of "finality."  Neither of these claims justified using information known to be incorrect, particularly given that Commerce had correct quantity information for CEP sales on the record that it could have used to recalculate NAGASE's assessment rate, as it did for NAGASE's export price ("EP") sales.

The Court should remand this matter to require Commerce to recalculate an assessment rate for NAGASE's CEP sales that is not based on information known to be incorrect.

## II. BACKGROUND

Consistent with the Court's order, *see NAGASE & Co., Ltd. v. United States*, 628 F. Supp. 3d 1326, 1344, 1347–48 (Ct. Int'l Trade 2023) (ECF Doc. No. 55), Appx1–Appx39, Commerce recalculated the G&A expense ratio for NAGASE after removing the compensation for payment expense, *see Remand Redetermination* at 9–10, 15. To effectuate that correction, it was necessary for Commerce to make two additional recalculations. First, Commerce needed to recalculate the amount of antidumping duties owed ("ANTIDUMPING DUTIES DUE"), which totaled $ [      ] for NAGASE's CEP sales. *See Memorandum to The File, Re: Margin Calculation for Yuki Gosei Kogyo Co., Ltd./NAGASE & Co., Ltd., 2018-2020 Remand* (July 14, 2023), Attachment 2 ("Margin Calculation Program, Log and Output") at 97, Appx103445 ("*Margin Program Output*"). Second, Commerce needed to recalculate two assessment rates: (1) an assessment rate for NAGASE, which was based on the CEP sales for which NAGASE was the importer of record ("IOR"), and (2) an assessment rate for an unaffliated IOR, which was based on the export price sales ("EP") made to that IOR. Commerce recalculated the assessment rate for NAGASE by dividing the corrected amount of antidumping duties owed by the total entered value of the CEP sales for which NAGASE was the IOR ($ [      ]). Commerce knew that this entered value was incorrect and, therefore, likewise knew that the resulting assessment rate for NAGASE of [   ]% was incorrect. Commerce also recalculated the assessment rate for the unaffiliated IOR by dividing the antidumping duties owed on EP sales to the unaffiliated IOR by the quantity of such sales. The resulting assessment rate for the unaffiliated IOR was $ [    ] per kilogram. *Margin Program Output* at 97, Appx103445.

## III. ARGUMENT

The CEP assessment rate calculated in the *Remand Redetermination* is not supported by substantial evidence and, therefore, the Court should remand this case again.

2

### A. Commerce Cannot Use Information It Knows to Be Incorrect

It is impermissible for Commerce to calculate an assessment rate based on information that it knows to be erroneous, because "{e}vidence cannot be substantial if Commerce is aware that the conclusion it supports is false." *Anshan Iron & Steel Co. v. United States*, 358 F. Supp. 2d 1236, 1243 (Ct. Int'l Trade 2004) (citing *Budd Co. Ry. Div. v. United States*, 1 C.I.T. 67, 70–76 (1980)) (remanding determination because Commerce was aware that its factual conclusion was false based on information learned in a separate proceeding, even though the information was not on the record of the proceeding on appeal); *see also Union Camp Corp. v. United States*, 53 F. Supp. 2d 1310, 1324 (Ct. Int'l Trade 1999).

Further, Commerce cannot ignore facts about which it has knowledge. Commerce may not disclaim knowledge based on technicalities. For example, Commerce cannot disclaim knowledge on the grounds that it was obtained in a separate proceeding with a separate record. *See Union Camp Corp.*, 53 F. Supp. 2d at 1324 (remanding a case because Commerce had determined in a different administrative review of the same product that a key piece of evidence relied upon by Commerce in the contested review was erroneous, holding that "deference . . . is not owed when credible evidence from outside the record indicates a significant error in Commerce's determination"). Nor can Commerce disclaim knowledge on the grounds that information was obtained after the final results were issued in a proceeding on appeal. *See Anshan Iron & Steel Co. v. United States*, 27 C.I.T. 1234, 1243–44 & n.7 (remanding because Commerce was aware that its factual conclusion was false based, in part, on a separate and directly contradictory determination made by Commerce in a separate proceeding after the final results were issued in the proceeding on appeal because "{a}lthough Commerce issued this determination subsequent to the determination under review in the present case, this court may take judicial notice of subsequent events that are properly brought before the court's attention"); *see also Union Camp*

*Corp*, 53 F. Supp. 2d at 1323–24 (remanding determination and ordering Commerce to re-open the administrative record to consider information that directly contradicted its factual conclusion, even though Commerce became aware of the information only after it issued its final results). If Commerce has actual knowledge, it may not ignore it. To do so would be an abuse of discretion.

Finally, "the Court itself has a responsibility to 'exercise its discretion to prevent knowingly affirming a determination with errors . . . .'" *Hyundai Elecs. Indus. Co. v. United States*, 395 F. Supp. 2d 1231, 1243 (Ct. Int'l Trade 2005) (citing *Torrington Co. v. United States*, 21 C.I.T. 1079, 1082 (1997)); *ATC Tires Private Ltd. v. United States*, 324 F. Supp. 3d 1355, 1362 (Ct. Int'l Trade 2018) (same); *Serampore Indus. Pvt., Ltd. v. U.S. Dep't of Commerce*, 12 C.I.T. 825, 834 (1988) (instructing Commerce to correct an error on remand "{b}ecause this action is being remanded to Commerce for {another calculation} and "{t}he Court is loathe to affirm a determination that might be based on a questionable record").

### B. On Remand, Commerce Knew the Entered Values for CEP Sales Were Incorrect

The evidence shows that the assessment rate for NAGASE was recalculated based on incorrect entered value information for CEP sales. As had been discussed extensively in the proceedings before the Court leading to the remand, *see* Pl.'s Mem. of P. & A. in Supp. of Pl.'s Rule 56.2 Mot. for J. Upon the Agency R., ECF Doc. No. 34 (Apr. 12, 2023), ECF Doc. No. 36 (Apr. 13, 2023) at 14–15; Pl.'s Reply Br. in Supp. of Mot. for J. on the Agency R., ECF Doc. Nos. 42, 43 (Aug. 29, 2023) at 17, the per-unit US duty amount reported in Field USDUTYU for CEP sales was also reported as the entered value in Field ENTVALU. *See* NAGASE's Response to the First Supplemental Questionnaire (A-588-878) (Jan. 22, 2021) ("SQR"), Exhibit S-28 (NAGASE's US sales database), Appx85019–85029.[1] Regardless of whether Commerce was

---

[1] Other evidence shows that the entered values for CEP sales were far lower than the actual sales

4

aware of the error during the underlying review, it was aware of the error on remand and could not pretend otherwise.

Commerce rejected NAGASE's argument regarding the correction of the error during the remand, stating that "NAGASE's understanding of the correct entered value is disputed." *Remand Redetermination* at 18. But this does not justify inaction on the part of the agency. Parties dispute issues before agencies all the time, and an agency is required to resolve the disputes in a manner that is supported by substantial evidence. Further, whether the parties agree on how to correct the entered value information is beside the point – the fact that the entered values for CEP sales were incorrect is not disputed and therefore those entered values could not be used to recalculate the assessment rate for NAGASE.

Furthermore, all parties do not have to agree that information is erroneous in order for an agency to be required to evaluate the accuracy of its determination. So long as there is "credible evidence" that "indicates a significant error in Commerce's determination," deference is not owed to Commerce. *Union Camp Corp. v. United States*, 53 F. Supp. 2d 1310, 1324 (Ct. Int'l Trade 1999). The record before Commerce during the remand unquestionably contained "credible

---

value. A sample Form 7501 entry summary (Entry No. [          ]) shows that the actual entered value reported for a single CEP sale of $ [     ] exceeded the total (and erroneous) entered value for all CEP sales that Commerce used in the denominator of the assessment rate calculation (*i.e.*, $ [     ]). *See* NAGASE's Response to Sections B and C of the Questionnaire (Nov. 19, 2020) ("BCQR"), Exhibit C-14 (sample Form 7501), Appx80854. NAGASE provided a reconciliation confirming that the data on the Form 7501 for entry summary [          ] (which showed a quantity of [     ] kg, an entered value of $ [     ], and an entry date of [          ]), *see* BCQR at Exhibit C-14, Appx80854, corresponds with the CEP sale reported under reference SEQU [   ] in NAGASE's U.S. sales database. *See* SQR at Exhibit S-6, Appx84752; *see also* SQR at Exhibit S-28, Appx85019–85029. It is mathematically impossible for the entered value of a single CEP sale to exceed the entered value for all CEP sales during the period of review.

5

evidence" that the entered values for CEP sales were incorrect and Commerce was aware of that evidence.

### C. The Record Includes Correct Information That Commerce Could Use to Calculate NAGASE's Assessment Rate

As NAGASE proposed in its comments on the draft Remand Redetermination, Commerce could have obviated the entire issue by recalculating the assessment rate for NAGASE as a per-unit (weight-based) rate. *See NAGASE's Comments on Draft Remand Results of Redetermination Pursuant to Court Remand* (July 21, 2023) at 2, 6–7 ("NAGASE's Comments"), Appx103755, Appx103759–103760. The record establishes the accuracy of the weight (in kilograms) reported in NAGASE's US sales database.[2] To recalculate NAGASE's assessment rate based on the reported weight, Commerce could simply have divided the antidumping duties owed for CEP sales ($ [         ]) by the total weight in kilograms of such sales ([          ] kilograms). *See Margin Program Output* at 97, Appx103445. This would have resulted in an assessment rate for NAGASE of $ [     ] per kilogram.

---

[2] In the response to Section C of the Antidumping Questionnaire, NAGASE submitted a sales reconciliation for CEP sales tying the quantity and value of such sales to its affiliated US reseller's income statement. *See* BCQR at C-6, Appx80729, Exhibit C-4, Appx80790–80821. Further, NAGASE provided documentation for one CEP sale and the quantity from that sample invoice is accurately reported in NAGASE's US sales database. *Compare* NAGASE's Response to Section A of the Questionnaire (Oct. 30, 2020) ("AQR") at Exhibit A-15, Appx80118–80122 (CEP sales trace demonstrating that quantity covered by sales invoice [          ] is [       ] KG), *with* SQR, Exhibit S-28 (NAGASE's US sales database) at 5, Appx85025 (demonstrating that said invoice quantity was accurately reported in NAGASE's US sales database under observation numbers ("SEQUs") [           ] ([                                    ]).

6

### D. None of Commerce's Claims Justified Using Information Known to Be Incorrect

None of the claims and arguments set forth by Commerce in the *Remand Redetermination* justified using information known to be incorrect.

First, Commerce claims it was not required to "revisit or revise any other aspects of its assessment rate calculation" beyond recalculating the G&A expense ratio because "no other issue was remanded" and it did not want to disturb the "administrative finality" of an issue that the Court did not remand. *Remand Redetermination* at 16, 18. This argument is based on the erroneous presumption that the recalculation of NAGASE's assessment rate was unrelated to the corrections that Commerce made as a result of the Court's remand order. As discussed above, in order to effectuate the Court's remand order, it was necessary for Commerce both to recalculate the amount of antidumping duties owed and then to recalculate the assessment rates for NAGASE and its unaffiliated importer. In making the required assessment rate recalculation for NAGASE, Commerce chose to use information it knew was incorrect (entered values for CEP sales) over information the record showed to be accurate (quantities for CEP sales).

Further, judicial precedent prohibiting Commerce from using information it knows to be incorrect overrides an interest in finality. *See Anshan Iron & Steel Co*, 358 F. Supp. 2d at 1243 (citing *Budd Co. Ry. Div.*, 1 C.I.T. at 70–76); *Union Camp Corp.*, 53 F. Supp. 2d at 1324. The basic purpose of the antidumping statute is to determine dumping margins accurately. *See Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1994) (stating "the basic purpose of the {antidumping} statute – determining current margins as accurately as possible"); *see also Borlem S.A.-Empreedimentos Industriais v. United States*, 913 F.2d 933, 937 (Fed. Cir. 1990) ("{D}eference is not owed to a determination that is based on data that the agency generating those data indicates are incorrect. The law does not require, nor would it make sense to require, reliance

7

on data which might lead to an erroneous result."). Moreover, an agency abuses its discretion when its decision "rests on clearly erroneous fact findings . . . ." *Hartford Fire Ins. Co. v. United States*, 918 F. Supp. 2d 1376, 1378 (Ct. Int'l Trade 2013) (quoting *Sterling Fed. Sys., Inc. v. Goldin*, 16 F.3d 1177, 1182 (Fed. Cir. 1994); *Gerritsen v. Shirai*, 979 F.2d 1524, 1529 (Fed. Cir. 1992)).

Second, Commerce claimed it was simply using its "standard practice" in calculating an *ad valorem* assessment rate for NAGASE using entered values. However, Commerce quoted only a part of its standard practice. Commerce has also stated that its "normal practice {is} to use a per-unit assessment rate when the entered value is unknown and to use an ad valorem assessment rate when the entered value is known." *1-Hydroxyethylidene-1, 1-Diphosphonic Acid from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2016-2018*, 84 Fed. Reg. 67925 (Dec. 12, 2019), accompanying Issues and Decision Memorandum at Comment 5.[3] The practice of using a per-unit assessment rate has been upheld by the courts. *See Fujian Lianfu Forestry Co., Ltd. v. United States*, 638 F. Supp. 2d 1325, 1355–56 (Ct. Int'l Trade 2009) (upholding Commerce's use of its "standard margin calculation program to calculate a per-unit assessment rate for all sales associated with that importer" where respondent did not report the actual entered value for all sales). And the practice of calculating a per-unit assessment rate applies when a respondent reports inaccurate entered values. *See Wooden Bedroom Furniture from the People's Republic of China*, 72 Fed. Reg. 46957 (Aug. 22, 2007), accompanying Issues and

---

[3] Commerce has implemented this standard practice in other determinations. *See, e.g., Certain Softwood Lumber Products from Canada*, 70 Fed. Reg. 73437 (Dec. 12, 2005), accompanying Issues and Decision Memorandum at Comment 38 ("Because the sales in question were EP sales, and {Respondent} did not know the entered value, it erred in not simply leaving the field blank. We can ensure that the entire amount owed from these importers can be collected by using a per-unit assessment rate."); *Chlorinated Isocyanurates from the People's Republic of China*, 76 Fed. Reg. 70957 (Nov. 16, 2011), accompanying Issues and Decision Memorandum at Comment 8 (calculating per-unit assessment rate).

Decision Memorandum at Comment 36 (calculating per-unit assessment rate when respondent reported inaccurate entered values in its US sales database).

Thus, the per-unit assessment rate proposed by NAGASE was entirely consistent with Commerce's established practice. Indeed, Commerce used a per-unit assessment rate in this very case for the unaffiliated IOR based on NAGASE's EP sales. *See Margin Output* at 97, Appx103445; *see also Memorandum to The File, Re: Margin Calculation for Yuki Gosei Kogyo Co., Ltd./NAGASE & Co., Ltd., 2018-2020 Remand* (July 14, 2023), Attachment 4 ("Draft Liquidation Instructions") at 2, Appx103325.

Third, Commerce discusses the facts on remand as if nothing had changed since the Final Results were issued in the annual review. However, the facts have changed substantially since the review in that Commerce knew during the remand proceedings that the entered values were incorrect. Thus, Commerce's reliance on *Alloy Piping Prods., Inc. v. Kanzen Tetsu Sdn. Bhd.*, 334 F.3d 1284 (Fed. Cir. 2003) is misplaced because the error at issue in that case was "not apparent." *Remand Redetermination* at 10–11 (citing *Alloy Piping*, 334 F.3d at 1292–93). Moreover, unlike in *Alloy Piping*, there is no question that NAGASE exhausted its administrative remedies by timely raising the assessment rate issue in its comments on the draft Remand Redetermination. *See* NAGASE's Comments at 2–8, Appx103755–103761.

Fourth, Commerce argues that there appears to be only one case in which it corrected an error on remand regarding an issue the Court had not specifically remanded, *see Cemex, S.A. v. United States*, 20 C.I.T. 993 (1996), *aff'd*, 133 F.3d 897 (Fed. Cir. 1998), and claims that the facts in that case are distinguishable from the current case. As an initial matter, for the reasons discussed above, the Court's remand order required the recalculation of NAGASE's assessment rate; therefore, that calculation was made pursuant to the remand order. Further, even if Commerce is

correct that there is no other case directly on point, this fact would not support the conclusion that it was permitted to use information known to be incorrect in the current case. Rather, the absence of a case directly on point with this one – where Commerce used information it knew was incorrect to implement a correction made pursuant to a court-ordered remand – suggests only that this is a case of first (or second) impression. And importantly, the absence of precedent exactly on point means that there is no legal support for Commerce's actions. Hence, Commerce and this Court must be guided by the well-established principles discussed above; in particular, Commerce is prohibited from using information known to be incorrect.

## IV. CONCLUSION

For the foregoing reasons, NAGASE respectfully requests that the Court (1) affirm Commerce's recalculation of NAGASE's G&A expense ratio; and (2) remand this case to Commerce with instructions to recalculate NAGASE's assessment rate without using incorrect CEP entered value information.

Respectfully submitted,

/s/ Jay C. Campbell
Jay C. Campbell
White & Case LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 626-3600
jcampbell@whitecase.com

/s/ Neil R. Ellis
Neil R. Ellis
Law Office of Neil Ellis PLLC
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015
(202) 258-5421
neil@neilellislaw.com

*Counsel to Plaintiff NAGASE & Co., Ltd.*

September 8, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Plaintiff's Comments in Partial Opposition to Remand Redetermination filed by NAGASE & Co., Ltd., as computed by White & Case LLP's word processing system (Microsoft Word 2016), is 3,151 words.

/s/ Jay C. Campbell
Jay C. Campbell