Slip Op. No. 24-87

## UNITED STATES COURT OF INTERNATIONAL TRADE

NAGASE & CO., LTD.,

      *Plaintiff,*

v.

UNITED STATES,

      *Defendant,*

*and*

DEER PARK GLYCINE, LLC,

      *Defendant-Intervenor.*

Before: Stephen Alexander Vaden,
Judge

Court No. 1:21-cv-00574 (SAV)

## <u>OPINION</u>

[Sustaining Commerce's Remand Determination.]

Dated:  July 30, 2024

*Neil R. Ellis*, Law Office of Neil Ellis PLLC, of Washington, DC, for Plaintiff Nagase & Co., Ltd.  With him on the brief was *Jay C. Campbell*, White & Case LLP, of Washington, DC.

*Kelly M. Geddes*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States. With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *Claudia Burke*, Assistant Director, Commercial Litigation Branch, and *Christopher Kimura*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

*Michelle Li*, Thompson Hine LLP, of Washington, DC, for Defendant-Intervenor Deer Park Glycine, LLC.

**Vaden, Judge:**  Before the Court is the U.S. Department of Commerce's (Commerce) remand determination in the first administrative review of the antidumping order on glycine from Japan, filed pursuant to the Court's opinion in *Nagase & Co. v. United States* (*Nagase I*).  *See* 47 CIT __, 628 F. Supp. 3d 1326 (2023). In *Nagase I*, the Court ordered Commerce to further explain its determination that a compensation for payment expense was properly treated as a general and administrative expense.  The Court also held that, in the absence of a finding of legal error, it could not command Commerce to change its Final Results on remand to address an alleged error in Nagase's assessment rate — an error that Nagase failed to timely raise.  On remand, Commerce declined to revisit the assessment rate. Although no party contests Commerce's remand determination on the compensation for payment expense, Nagase continues to challenge Commerce's decision not to modify the assessment rate.  For the following reasons, Commerce's remand determination is **SUSTAINED**.

## BACKGROUND

The Court presumes familiarity with this case's facts as described in its previous opinion.  *See Nagase I*, 47 CIT __, 628 F. Supp. 3d at 1330–36.  This opinion will recount those facts relevant to review of the Remand Results.  On April 11, 2023, the Court issued its decision granting in-part and denying in-part Nagase's Motion for Judgment on the Agency Record.  *Id.* at 1330.  Two issues from the prior opinion remain relevant in this remand determination.

First, the Court held that Commerce incorrectly categorized a compensation for payment expense as a general and administrative expense and remanded the

issue for further analysis and consideration. *Id.* at 1344. By statute, Commerce must determine whether a foreign producer is selling merchandise below the "cost of production." *Id.* at 1337 (citing 19 U.S.C. §§ 1677b(b)(1), (3)). Commerce is directed to include "an amount for selling, general, and administrative expenses" when calculating the cost of production. *Id.* (citing 19 U.S.C. § 1677b(b)(3)(B)). Commerce usually "exclude[s] expenses related to the production of non-subject merchandise from its calculation of general and administrative expenses if the expenses are allocated properly in the producer's … books and records." *Id.* at 1332. Nagase explained that a non-glycine customer paid it to produce a drug; but when Nagase's facility failed an inspection, Nagase agreed to compensate the customer for the costs incurred and to dispose of any product already produced. *Id.* at 1333. Commerce determined that this compensation payment should be categorized as a general and administrative expense. *Id.* at 1341. The Court held that Commerce's findings on the issue were "conclusory and were contradicted by record evidence" and remanded the issue for reconsideration. Final Results of Redetermination Pursuant to Ct. Remand Order (Remand Results) at 1–2, ECF No. 57 (citing *Nagase I*, 47 CIT __, 628 F. Supp. 3d at 1342, 1344).

Second, the Court sustained Commerce's rejection of Nagase's untimely request to change the assessment rate determination. *Nagase I*, 47 CIT __, 628 F. Supp. 3d at 1347. The request stemmed from Nagase's claim that it submitted inaccurate entered value figures for its constructed export price sales.[1] *Id.* at 1335

---

[1] The dumping margin and assessment rate are "the two most important numbers calculated in any antidumping review." *Nagase I*, 47 CIT __, 628 F. Supp. 3d at 1331. The dumping

(quoting Pl.'s Reply at 15, ECF No. 42) ("Nagase determined that 'the per-unit amounts of regular U.S. duties paid on Nagase's imports corresponding with [constructed export price] sales were inadvertently duplicated and reported as the entered values for those sales.'").  Although the calculation never changed from the publication of the Preliminary Results, Nagase did not seek a correction until nineteen days after Commerce published the Final Results — well after the five-day window for ministerial error allegations had closed.  *Id.*

The Court determined that Commerce did not abuse its discretion in denying Nagase's untimely request to correct the claimed error.  *See id.* at 1347.  It also rejected Nagase's proffered work-around methodologies, which Nagase claimed Commerce could use to derive a more accurate entered value figure — despite that figure's absence from the record.  *Id.* at 1346 ("The record does not contain the target at which Commerce should be aiming, and this Court is limited to facts on the record when it reviews Commerce's determinations.").  Although the Court lacked a "free-floating power to command Commerce to alter its Final Results on remand without a

---

margin is "'the total amount by which the price charged for the subject merchandise in the home market (the "normal value") exceeds the price charged in the United States[.]'"  *Id.* (quoting *Koyo Seiko Co. v. United States*, 258 F.3d 1340, 1342 (Fed. Cir. 2001)).  It "applies prospectively to future [subject merchandise] entries[,] … which [are] cover[ed] with cash deposits … until the completion of the next administrative review."  *Id.*

When Nagase brings subject merchandise into the United States, it lists the declared value for the merchandise at entry — the "entered value" — at a value typically lower than for what the merchandise is later sold.  *Id.* at 1331–32.  As a result, "applying the dumping margin rate to the declared 'entered value' would result in the under-collection of duties."  *Id.* at 1332.  To address this problem, Commerce calculates an assessment rate by dividing the dumping margin by the entered value and "applies the resulting rate 'uniformly on all entries each importer made during the [period of review].'"  *Id.* (quoting *Koyo Seiko*, 258 F.3d at 1343).  Entered value is thus an important factor in the assessment rate's calculation and the determination of what antidumping duties are due.

finding of legal error," Nagase could continue to request that Commerce correct the assessment rate as "Commerce retains the discretionary power to do so until after judicial review is completed." *Id.* at 1347 (citing *Dorbest Ltd. v. United States*, 604 F.3d 1363, 1376 (Fed. Cir. 2010); *In re Clean Water Act Rulemaking*, 60 F.4th 583, 594 (9th Cir. 2023)).

On remand, Nagase filed a letter requesting that Commerce revise the assessment rate to exclude the allegedly inaccurate entered value data. *See generally* Nagase Letter to Commerce (June 8, 2023), J.A. at 3,093, ECF No. 66. Nagase proposed three possible pathways to do so. Commerce could: (1) permit Nagase to report accurate entered value sales; (2) "reverse engineer" accurate values by dividing the reported constructed export price entered values by the U.S. duty; or (3) recalculate the constructed export price assessment rate as a per-unit (weight-based) rate rather than an *ad valorem* rate.[2]  *Id.* at 2–3. As with the initial proceedings, at no point during the remand did Nagase proffer or place on the record what it alleges

---

[2] "Commerce 'normally will calculate the assessment rate by dividing the dumping margin found on the subject merchandise examined by the entered value of such merchandise for normal customs duty purposes.' Thus, the normal method as prescribed by the regulation results in an *ad valorem* assessment rate." *Albemarle Corp. v. United States*, 37 CIT 1202, 1218 (2013) (quoting 19 C.F.R. § 351.212(b)(1)), *aff'd in part, rev'd in part*, 821 F.3d 1345, 1359 (Fed. Cir. 2016). Under some circumstances, Commerce may calculate the assessment rate on a per-unit basis, which would state the margin as dollars per kilogram. *Id*; *see also* Pl.'s Comments in Partial Opp'n to Remand Redetermination (Pl.'s Br.) at 8, ECF No. 59 (quoting *1-Hydroxyethylidene-1, 1-Diphosphonic Acid from the People's Republic of China*, 84 Fed. Reg. 67,925 (Dep't of Com. Dec. 12, 2019), accompanying Issues and Decisions Memorandum at Comment 5) ("Commerce has also stated that its 'normal practice [is] to use a per-unit assessment rate when the entered value is unknown and to use an *ad valorem* assessment rate when the entered value is known.'"). Under Nagase's approach, "This calculation would use the [potential uncollected dumping duties] in the numerator and the total weight in kilograms of [Nagase's constructed export price] sales during the [period of review] as the denominator, to derive a per-kg figure" — thereby avoiding use of the entered value information.  Nagase Letter to Commerce at 3, J.A. at 3,095, ECF No. 66.

is the actual entered value amount. Oral Arg. Tr. at 8:16–19, ECF No. 73. The Court and Commerce remain ignorant of that amount to this day.

The Defendant-Intervenor opposed Nagase's request but otherwise did not file a brief.[3] *See* Deer Park Letter to Commerce (June 13, 2023), J.A. at 3,098, ECF No. 66. In the original court proceedings, Deer Park opposed Nagase's alternative means to derive the correct entered value figure. *Nagase I*, 47 CIT __, 628 F. Supp. 3d at 1346; Def.-Int.'s Resp. to Pl.'s Mot. for J. on Agency R. (Def.-Int.'s Br.) at 29–30, ECF No. 39; *Nagase I* Oral Arg. Tr. at 76:7–13, ECF No. 54.

Commerce published its Draft Results on July 14, 2023. Draft Results of Redetermination Pursuant to Ct. Remand Order (July 14, 2023) at 12, J.A. at 3,116, ECF No. 66. It filed the Remand Results with the Court on August 9, 2023. *See generally* Remand Results, ECF No. 57. Nagase's dumping margin declined from 27.71 percent in the original review to 15.93 percent following remand. *Compare id.* at 23, *with Glycine from Japan: Final Results of the Antidumping Administrative Review; 2018-2020; Correction*, 86 Fed. Reg. 57,127 (Dep't of Com. Oct. 14, 2021). The agency explained its decision to remove the compensation for payment expense from the general and administrative expense ratio, the resulting recalculated ratio, and its denial of Nagase's request to revise the assessment rate. *See generally* Remand Results, ECF No. 57. Commerce stated that, on remand, it collected more information from Nagase via supplemental questionnaires regarding the compensation for

---

[3] During the remand, Defendant-Intervenor GEO Specialty Chemicals, Inc. transferred all "rights, title, and interest in and to its glycine business" to Deer Park Glycine, LLC (Deer Park or Defendant-Intervenor). Def.-Int.'s Mot. to Amend Caption at 1, ECF No. 68. The Court amended the caption to reflect this change. ECF No. 70.

payment issue. *Id.* at 6–8. Commerce also clarified that it does not use manufacturing costs related to a particular product in its general and administrative expense calculation. *Id.* at 9. It determined, "Record evidence indicates that the compensation for payment expense relates to a production process or manufacturing cost that does not involve glycine and that [Nagase] continues to produce other subcontracted non-glycine products." *Id.* Commerce therefore removed the compensation for payment expense and recalculated Nagase's general and administrative expense ratio. *Id.* at 9–10.

In its brief to this Court, Nagase states that Commerce made two more calculations to effectuate its changes to the general and administrative expense ratio. *See* Pl.'s Comments in Partial Opp'n to Remand Redetermination at 2, ECF No. 59 (Pl.'s Br.) (citing Margin Calculation Output (July 14, 2023) at 97, J.A. at 103,445, ECF No. 64). First, Commerce recalculated the amount of antidumping duties owed. *Id.* Second, Commerce recalculated Nagase's assessment rate based on the constructed export price sales for which it was the importer of record. *Id.* Commerce recalculated Nagase's assessment rate by dividing the now-corrected amount of antidumping duties owed by the total entered value of the constructed export price sales for which Nagase was the importer of record — the latter still reflecting the data Nagase originally submitted. *Id.*

Commerce addressed its decision not to further revisit the assessment rate. Remand Results at 10–23, ECF No. 57. It noted that Commerce's assessment rate calculation relied on data Nagase submitted and that Nagase did not seek to update

the data in a timely manner. *Id.* at 10. Commerce also noted that Deer Park did not agree that Nagase's alternative methodology would correct the alleged error — especially since the "correct" entered value figure is unknown. *Id.* Citing the Federal Circuit's *Alloy Piping* decision, Commerce described the question as "whether it would be appropriate to disturb the administrative finality of an issue … arising from Commerce's reliance [on Nagase's] reported data." *See id.* at 10–11; *see also Alloy Piping Prods., Inc. v. Kanzen Tetsu Sdn. Bhd.*, 334 F.3d 1284, 1292–93 (Fed. Cir. 2003). Commerce found that Nagase failed to cite "any … remand determinations in which Commerce made a correction for an issue that the Court did not remand." Remand Results at 11, ECF No. 57.

With respect to Nagase's proposal to use a per-unit methodology, Commerce explained that its normal practice is to use the *ad valorem* methodology when a respondent provides entered value data. *Id.* at 15; *see also* 19 C.F.R. § 351.212(b)(1) ("The Secretary normally will calculate the assessment rate by dividing the dumping margin … by the entered value of such merchandise for normal customs duty purposes."). Commerce also found that it was unclear that Nagase's alternative methodology would work because "the 'record does not contain a target at which Commerce should be aiming'" and "'the other interested parties do not accede to Nagase's understanding of the correct entered value total or to Commerce's use of nonstandard means to derive it.'" Remand Results at 18, ECF No. 57 (quoting *Nagase I*, 47 CIT __, 628 F. Supp. 3d at 1346); *see also Nagase I*, 47 CIT __, 628 F. Supp. 3d at 1346 n.7 (quoting Pl.'s Mot. for J. on Agency R. and Supp. Opening Br. (Pl.'s Mot.

Br.) at 37, ECF No. 34) ("Nagase, applying its alternative methodology, describes the resulting rate as 'a far more realistic figure' but noticeably does not call it the correct figure."). Although Commerce found that it had some discretion to depart from its normal methodology, it believed that Nagase should have submitted any updated data during the administrative review. Remand Results at 15–17, ECF No. 57.

Nagase supports Commerce's excluding the compensation for payment expense from the general and administrative expense ratio. *Id.* at 12; Pl.'s Br. at 1, ECF No. 59. However, Nagase continues to press the Court to order Commerce not to use the data Nagase submitted in its recalculation. Remand Results at 12–13, ECF No. 57; Pl.'s Br. at 1, ECF No. 59. To distinguish *Nagase I*'s timeliness, exhaustion, and finality considerations, Nagase advances three arguments for why the "circumstances surrounding Commerce's recalculation of [Nagase's] assessment rate … differed fundamentally from the circumstances during the underlying annual review." Pl.'s Br. at 1, ECF No. 59. Nagase first argues that Commerce knowingly used the incorrect entered value data when implementing the Court's remand. *Id.* at 3–6. Because the Court reviews the Remand Results for substantial evidence, the recalculation created a new opportunity to review the assessment rate issue and Nagase's otherwise untimely claim. *Id.* Nagase believes that the Court should remand the case "to recalculate an assessment rate … that is not based on information known to be incorrect." *Id.* at 1. It next proposes that Commerce could use information on the record to calculate the assessment rate using a per-unit (weight-based) methodology instead of an *ad valorem* methodology — thereby

overcoming the finality concerns by avoiding the "inaccurate" data without reopening the record. *Id.* at 6. Nagase's final argument is that Commerce's response to Nagase's request to revise the assessment rate during the remand is subject to judicial review so that prior finality or timeliness concerns are no longer relevant. Oral Arg. Tr. at 12:9–14, ECF No. 73 (The Court: "[B]ecause [Commerce] chose to expound on further reasons why they thought it was not appropriate for them to exercise their discretion and review this issue[,] … that makes their methodology and the rationales … a fresh issue for review by me?" Mr. Ellis: "Yes, correct, Your Honor.").

Commerce responds that it complied with the Court's remand order to reexamine the compensation for payment expense and that its redetermination is supported by substantial evidence. Def.'s Resp. in Supp. of Remand Results (Def.'s Br.) at 4–5, ECF No. 63. It also argues that it correctly declined Nagase's entreaties to revise the assessment rate. *Id.* at 5–9. Unlike Nagase, Commerce views the remand as necessarily tied to the original determination. Therefore, Nagase's failure to raise timely concerns about the assessment rate during the original proceedings pretermits the Court's ability to issue any order regarding the calculation now. *Id.* at 6 ("[Commerce] concluded that the interest in finality outweighed the interest in ensuring accuracy where the party responsible for the error had failed to take advantage of multiple opportunities to raise the issue before the results became final."). Citing Federal Circuit precedent, Commerce argues that the Court's remand on an unrelated issue is not a "vehicle for circumventing exhaustion requirements." *Id.* at 6–7 (citing *Alloy Piping*, 334 F. 3d at 1292–93; *QVD Food Co. v. United States*,

658 F.3d 1318, 1328 (Fed. Cir. 2011); *Dorbest*, 604 F.3d at 1363).  The agency found that it would be inappropriate to use Nagase's alternative methodologies because the correct entered value "target" is not on the record, Commerce and Deer Park oppose using "nonstandard means" to derive it, and Commerce's preference is to use a respondent's entered value data when it is provided.  *Id.* at 9 (quoting *Nagase I*, 47 CIT __, 628 F. Supp. 3d at 1346).

The Court held oral argument on February 16, 2024.  ECF No. 71.  No party objected to Commerce's new determination on the compensation for payment issue.  Oral Arg. Tr. at 6:10–18, 40:19–24, ECF No. 73.  The parties disagreed about the assessment rate.  Nagase emphasized that the remand created a new determination for the Court to review and the circumstances favored ordering Commerce to reconsider it.  *Id.* at 12:5–14, 12:25–13:7.  Commerce and Deer Park emphasized the need for finality, that the Court sustained and did not remand the assessment rate issue, and that the parties never conceded that Nagase's entered value data was incorrect because there was no merits determination on the issue.  *Id.* at 6:25–7:3, 22:6–13, 35:14–19, 39:23–40:6.

## JURISDICTION AND STANDARD OF REVIEW

As in *Nagase I*, the Court has jurisdiction over Nagase's challenge under 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting final determinations in antidumping reviews.  The Court must sustain Commerce's "determination[s], finding[s], or conclusion[s]" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law[.]" 19 U.S.C. § 1516a(b)(1)(B)(i).  "[T]he question is not whether

the Court would have reached the same decision on the same record[;] rather, it is whether the administrative record as a whole permits Commerce's conclusion." *New Am. Keg v. United States*, 45 CIT __, No. 20-00008, 2021 Ct. Intl. Trade LEXIS 34, at *15 (Mar. 21, 2021). Additionally, "The results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's remand order.'" *Xinjiamei Furniture (Zhangzhou) Co. v. United States*, 38 CIT 189, 190 (2014) (quoting *Nakornthai Strip Mill Pub. Co. v. United States*, 32 CIT 1272, 1274 (2008)).

## DISCUSSION

### I.    Summary

The Court remanded the issue of whether Nagase's compensation for payment expense should have been included in Commerce's calculation of the general and administrative expense ratio.  Commerce determined on remand that the compensation for payment expense should be removed from Nagase's ratio and performed the recalculations needed to effectuate that change.  Because the remand determination is supported by substantial evidence and no party objects, the Court sustains the Remand Results.

The Court did not order Commerce to reconsider the assessment rate; but it noted, "Commerce retains discretionary power to do so until after judicial review" concludes. *Nagase I*, 47 CIT __, 628 F. Supp. 3d at 1347 (citing *Dorbest*, 604 F.3d at 1376).  Despite Nagase's request on remand, Commerce declined to alter the entered value used in determining the assessment rate.  Commerce calculated the assessment rate using the information Nagase put on the record; there is no allegation of any

mathematical error.   Because Nagase failed to raise any objection during the administrative review to Commerce's calculations, it may not do so now.   That this Court remanded the review to Commerce to address an unrelated argument does not save Nagase from its procedural default.   A remand is not a new wellspring for issues already forfeited.   Commerce's Remand Results will be **SUSTAINED**.

## II.   Compensation for Payment

The first issue is whether Commerce complied with the Court's order to reconsider the compensation for payment expense.   On remand, Commerce solicited more information on the expense from Nagase via supplemental questionnaires. Remand Results at 7, ECF No. 57.   After reviewing the new evidence, Commerce reversed its original position.   It wrote, "While Commerce initially considered the compensation for payment similar to litigation or settlement claims, upon reexamination, we find that the amount represents the reimbursement of certain of the consignee's expenses incurred for the production of non-subject merchandise." *Id.* at 8.   Because Nagase continues to produce custom non-glycine products, the cost of the compensation for payment expense can be offset by that continuing line of business.   Therefore, the compensation for payment expense should not be included in the general and administrative expenses for Commerce's calculations in this review.   *See* Oral Arg. Tr. at 5:25–6:15, ECF No. 73 (summarizing Commerce's actions on remand); Remand Results at 9, ECF No. 57 ("Record evidence indicates that the compensation for payment expense relates to a production process or manufacturing

cost that does not involve glycine and that [Nagase] continues to produce other subcontracted non-glycine products.").

Nagase supports Commerce's remand determination on this issue, and Deer Park does not object. Oral Arg. Tr. at 6:10–18, ECF No. 73 (The Court: "[D]o I understand that there is no objection by any party to the Commerce Department's new determination on the compensation for payment issue?" Ms. Geddes: "You have that information correct, Your Honor." Mr. Ellis: "And you're correct, Your Honor, that there is no objection or remaining issue regarding that topic."); *id.* at 40:19–24 (The Court: "I did not hear that you had any objection … on behalf of your client, Deer Park Glycine … to Commerce's redetermination with regard to the compensation for payment expense; is that correct …?" Ms. Li: "No objection; that's correct."). Commerce complied with the Court's remand order to reexamine its determination regarding the compensation for payment expense, and no party objects to the agency's new determination. The Court finds that Commerce's Remand Results are supported by substantial evidence and are therefore **SUSTAINED**.

### III. Recalculation of the Assessment Rate

The Court next turns to the issue not remanded: Nagase's objection to the assessment rate. Nagase argues that the Court should remand this case for Commerce to use one of Nagase's proffered solutions to change the assessment rate — either reopening the record for Commerce to accept "corrected" entered value data or "reverse engineer[ing]" the numbers from information already on the record. *See* Nagase Letter to Commerce at 3, J.A. at 3,095, ECF No. 66; *see also* Pl.'s Br. at 6,

ECF No. 59.  Nagase maintains that "[t]he circumstances surrounding … the remand differed fundamentally from … the underlying … review."  Pl.'s Br. at 1, ECF No. 59.

The core of Nagase's argument is that, regardless of its procedural default, the remand created a new determination for judicial review when Commerce (1) recalculated the general and administrative expense ratio, knowing that one of the recalculation inputs involved the questioned data and (2) explained in the Remand Results its decision not to exercise its discretion to alter the data.  *See id.* at 2, ECF No. 59 ("Commerce [when recalculating Nagase's assessment rate] knew that this entered value was incorrect and, therefore, likewise knew that the resulting assessment rate for [Nagase] … was incorrect.").  Nagase essentially argues that the remand revived Nagase's defaulted objection.

From Commerce's perspective, the Court remanded on a separate issue; and it would be inappropriate to reconsider the assessment rate after the Court found no legal error on the initial review.  Remand Results at 15–16, ECF No. 57; Def.'s Br. at 5, ECF No. 63 (citing *Nagase I*, 47 CIT __, 628 F. Supp. 3d at 1344–47).  Commerce opposes Nagase's solutions — reopening the record or using a per-unit assessment rate — because doing so undermines the principle of finality and deviates from Commerce's standard methodology.  Def.'s Br. at 8–9, ECF No. 63; *see also* Oral Arg. Tr. at 35:21–25, ECF No. 73 ("The question was should we … reopen a closed issue that was not remanded based on an allegation that isn't in the record and that would require us to collect new information or to deviate from our standard methodology.").

The Court remains unconvinced that the remand eliminated the consequences of Nagase's procedural default. This Court may not use non-record information in its review, and Nagase has consistently refused to provide either Commerce or this Court with what it believes the "correct" entered value amount is. *See* Oral Arg. Tr. at 8:16–19, ECF No. 73. Because Nagase provided the only entered value amount on the record, the record it built does not demonstrate error. Nagase's arguments are also at odds with Federal Circuit precedent. *See, e.g.*, *Dorbest*, 604 F.3d at 1377. The Court will **SUSTAIN** Commerce's remand determination against Nagase's remaining objections.

## A.

It is important to note the Court's limited role in reviewing Commerce's determinations. The Court is not at liberty to conduct independent factfinding to sustain or overturn Commerce's final decisions in antidumping reviews. *Cf. Nippon Steel Corp. v. Int'l Trade Comm'n*, 345 F.3d 1379, 1381 (Fed. Cir. 2003) ("[T]o the extent the [CIT] engaged in refinding the facts (*e.g.*, by determining witness credibility), or interposing its own determinations … [it] exceeded its authority."). Instead, federal statute limits the Court to review of the record created by the parties before the agency. *See* 19 U.S.C. § 1516a(b)(2)(A) (defining scope of record for review in proceedings before the CIT); *QVD Food*, 658 F.3d at 1324–25 (quoting S. Rep. No. 96-249, at 247–48 (1979)) ("[J]udicial review of antidumping proceedings is based on 'information before the relevant decision-maker at the time the decision was rendered[.]'"). The parties bear the burden to create that record. *Qingdao Sea-Line*

*Trading Co. v. United States*, 766 F.3d 1378, 1386 (Fed. Cir. 2014). Should that record turn out to be inadequate, the parties also bear the costs of their failure to put necessary information on the record. *Navneet Educ. Ltd. v. United States*, 47 CIT __, 2023 Ct. Intl. Trade LEXIS 194, at *35 (Dec. 29, 2023) (declining to adjudicate a claim where the plaintiff "unfortunately did not place any such evidence on the record ….").

Commerce requested that Nagase provide the entered value for all the glycine it exported to the United States during the period of review. Nagase Initial Questionnaire, J.A. at 1,312, ECF No. 45. Nagase provided a dollar figure for that amount. Pl.'s Mot. Br. at 5, 14, ECF No. 34 (identifying the entered value provided); Remand Results at 21, ECF No. 57 ("[Nagase] reported entered value and, thus, the entered value is on the record."). Commerce used the figure Nagase provided to calculate the resulting assessment rate and the additional duties Nagase owed. *Nagase I*, 47 CIT __, 628 F. Supp. 3d at 1335. There is no dispute that Commerce's mathematical calculations — both in its original determination and on remand — are correct. Remand Results at 17, ECF No. 57 ("[Nagase has] alleged no such error in Commerce's programming or in Commerce's calculation methodology used to calculate its assessment rate."). Nagase objects that it provided an inaccurate amount for the entered value and that it will pay a substantial amount in excess duties that it should not owe. Nagase Letter to Commerce at 2, J.A. at 3,094, ECF No. 66. Its problem is that there is no other figure on the record reflecting an alternative amount for the entered value of the glycine it exported to the United States. Indeed, Nagase has conspicuously declined to provide either Commerce or

the Court with what it claims is the "correct" entered value amount. *See* Oral Arg.
Tr. at 8:16–19, ECF No. 73 (The Court: "[T]here is no proffered actual value for what
the 'correct' entered value is anywhere; that number has never been disclosed." Mr.
Ellis: "That's correct."). Because (1) the Court is limited to reviewing the record that
was before the agency, (2) Commerce used the entered value Nagase provided, and
(3) there is no mathematical error in Commerce's calculations using that amount,
there is no error on the record. Nagase cannot object that Commerce chose to use the
value it provided. *Cf. ABB Inc. v. United States*, 42 CIT __, 355 F. Supp. 3d 1206,
1222 (2018) ("When a respondent provides seemingly complete, albeit completely
inaccurate, information, [the law] does not require Commerce to issue a supplemental
questionnaire seeking assurances that the initial response was complete and
accurate. In other words, Commerce is not obligated to issue a supplemental
questionnaire to the effect of, 'Are you sure?'"). Any information a party places on the
record may be used by Commerce in its determination. *Navneet*, 47 CIT __, 2023 Ct.
Intl. Trade LEXIS 194, at *27 (declining plaintiff's entreaties to order Commerce to
ignore evidence it placed on the record); *Cheng Shin Rubber Ind. Co. v. United States*,
47 CIT ___, 2023 Ct. Intl. Trade LEXIS 19, at *29 (Feb. 13, 2023) (same). Commerce
cannot be held responsible for Nagase's failure to create a perfect record. *Qingdao
Sea-Line*, 766 F.3d at 1386 ("The burden of creating an adequate record lies with the
interested parties, not with Commerce.").

    To compound matters, Nagase never objected to Commerce's calculations —
using the figure Nagase provided — during the entire pendency of the original

administrative review. *Nagase I*, 47 CIT __, 628 F. Supp. 3d at 1344.  Nagase waited until weeks after the publication of the Final Results before alleging it had provided inaccurate information.  *Id.* at 1335.  But even if Nagase had timely proffered an objection during the ministerial error period following publication of the Final Results, its objection still would have been untimely.  *QVD Food*, 658 F.3d at 1328 (holding that a party may not raise in a ministerial error allegation an objection that could have been made following the publication of the preliminary results). Commerce never wavered in its use of the data Nagase provided.  The assessment rate Commerce calculated in its original determination was the same one it had published in its Preliminary Results.  *Compare* Prelim. Margin Calculation Output, J.A. at 102,781, ECF No. 44, *with* Final Margin Calculation Output, J.A. at 103,299, ECF No. 44.   Commerce's regulations have long provided that, following the Preliminary Results' publication, parties must submit a case brief to the agency containing "all arguments that continue in the submitter's view to be relevant to the Secretary's final determination[.]"  19 C.F.R. § 351.309(c)(2); *see also* Oral Arg. Tr. at 16:10–15, ECF No. 73  (The Court:  "[T]his allegation is untimely in the extreme.  It's actually not that you missed it by two weeks, you missed it by a matter of months." Mr. Ellis:  "That's correct."  The Court:  "It wasn't close."  Mr. Ellis:  "That's correct."). Nagase submitted such a brief, but it did not object to Commerce's calculation of the assessment rate.  *See* Nagase Admin. Case Br., J.A. at 102,799, ECF No. 44; Nagase Admin. Rebuttal Br., J.A. at 102,839, ECF No. 44.  It was at that point Nagase relinquished its right to object to the data Commerce used.  *QVD Food*, 658 F.3d at

1328. Nagase's failure to file a ministerial error allegation following publication of the Final Results was just the cherry on top of Nagase's forfeiture sundae.

Precedent is straightforward. "Neither this Court nor the Court of Appeals for the Federal Circuit has ever found an abuse of discretion where Commerce has declined to correct a ministerial error that was detectable during the original proceedings but was not raised until after publication of the final results and the closure of the five-day window for ministerial error comments." *Nagase I*, 47 CIT __, 628 F. Supp. 3d at 1345 (citing *Dorbest*, 604 F.3d at 1377). Commerce's remand determination does not change this rule. Having previously forfeited its objection and with no new evidence regarding the entered value amount on the record, there is nothing to raise now. "The remand after th[e] first appeal was on one very narrow ground, and that ground is all that remains to be litigated in this subsequent appeal." *Vivint v. Alarm.com Inc.*, 856 F. App'x 300, 304 (Fed. Cir. 2021); *see also NEXTEEL Co. v. United States*, 44 CIT __, 461 F. Supp. 3d 1336, 1343–46 (2020) (declining to consider arguments that could have been raised during proceedings in front of Commerce but were not).

Although Commerce may have the power to offer Nagase an opportunity to revise its data as a matter of grace following publication of the Final Results, it is not legally obligated to do so. *Compare Dorbest*, 604 F.3d at 1376–77 (holding that, although Commerce has the discretion to correct an alleged error until judicial review concludes, a court may not force it to do so once the ministerial error allegation period closes), *with ATC Tires Priv. Ltd. v. United States*, 42 CIT __, 324 F. Supp. 3d 1355,

1363 (2018) (affirming Commerce's discretionary decision to *sua sponte* correct a ministerial error without a formal error allegation). Even where an alleged error "is apparent (or should have been apparent) from the face of the calculation or from the final determination itself," Nagase is still "required to exhaust its administrative remedies." *Alloy Piping*, 334 F.3d at 1292–93. The Court's role is circumscribed by Federal Circuit precedent and limited to the record that Nagase built with its submissions. It is undisputed Nagase failed to raise an objection during the time allotted by regulation. That ends the matter.

### B.

Nagase's final effort to gain a remand is its argument that there are alternative methodologies that could divine a more accurate assessment rate. Pl.'s Br. at 6, ECF No. 59. This argument misses the mark for similar reasons. First, there is only one entered value on the record of this case. Pl.'s Mot. Br. at 5, 14, ECF No. 34; Remand Results at 21, ECF No. 57 ("[Nagase] reported entered value and, thus, the entered value is on the record."). It is also undisputed that Commerce used its normal methodology in calculating the assessment rate. *See* Pl.'s Br. at 8, ECF No. 59; *see also* Remand Results at 22, ECF No. 57. Because the parties agree that Commerce correctly performed its calculations using the data the parties provided to it, there is no "wrong" information present on the record for which a workaround is necessary. *Cf. Alloy Piping Prods., Inc. v. United States*, 26 CIT 330, 352 (2002), *aff'd sub nom. Alloy Piping Prods., Inc. v. Kanzen Tetsu Sdn. Bhd.*, 334 F.3d 1284 (Fed. Cir. 2003)

("Procedures exist allowing respondents to correct submitted data.  Kanzen's failure to follow those procedures in this case is fatal to its position.").

Second, there is no objective way to tell how much more "accurate" Nagase's proposed methodologies are because Nagase has not disclosed what the "correct" entered value is.  *See* Oral Arg. Tr. at 8:16–19, ECF No. 73.  Without knowing what the target is at which Commerce is aiming, it is impossible to determine how much "closer" we are.  All Commerce has is Nagase's assertion that the amount should be much less than Commerce's determination.  *Nagase I*, 47 CIT __, 628 F. Supp. 3d at 1346 ("The record does not contain the target at which Commerce should be aiming, and this Court is limited to facts on the record when it reviews Commerce's determinations."); *id.* at 1346 n.7 (quoting Pl.'s Mot. Br. at 37, ECF No. 34) ("Nagase, applying its alternative methodology, describes the resulting rate as 'a far more realistic figure' but noticeably does not call it the correct figure.").

Third, Nagase has similarly forfeited its arguments regarding any workaround methodologies by failing to raise them before the agency.  *Navneet*, 47 CIT __, 2023 Ct. Intl. Trade LEXIS 194, at *42 (citing *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990)) ("As the Federal Circuit has explained, when a party fails to raise a particular argument before the agency, that argument is forfeited.").  Because Nagase failed to allege any error in the assessment rate during the administrative review, Commerce had no occasion to opine in its final decision about whether Nagase's proposals are possible.  Remand Results at 17, ECF No. 57 ("[A]ny alleged reporting error should have been discovered and raised by Nagase during the

administrative review."); *see also* Oral Arg. Tr. at 27:24–28:2, ECF No. 73 (Ms. Geddes: "Commerce reasonably found [using Nagase's alternative methodology] was inappropriate … when the information on the record was not clear as to why [using Commerce's] standard methodology, relying on the entered values, would be incorrect.").

Deer Park Glycine alleges Nagase's proposal would generate inaccurate results, and it has consistently objected to Nagase's alternative methodologies since Nagase first raised them in this Court. *Nagase I*, 47 CIT __, 628 F. Supp. 3d at 1346; Def.-Int.'s Br. at 29–30, ECF No. 39; *Nagase I* Oral Arg. Tr. at 76:7–13, ECF No. 54. Nagase's procedural default prevents the Court from having the benefit of Commerce's judgment in reviewing the proposed alternative calculations. *See McCarthy v. Madigan*, 503 U.S. 140, 145 (1992) (noting that "agencies, not the courts, ought to have primary responsibility for [their] programs" such that allowing the agency to first provide its views "promotes judicial efficiency" by "produc[ing] a useful record for subsequent judicial consideration"); *Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, 48 CIT __, 2024 Ct. Intl. Trade LEXIS 55, at *27 (May 8, 2024) ("Allowing agencies to address issues first promotes accuracy and judicial economy."). There is no agency record on this issue for the Court to review. *Ellwood City Forge Co. v. United States*, 46 CIT __, 582 F. Supp. 3d 1259, 1276 (2022) (citing *Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1145 (Fed. Cir. 2013)) ("Exhaustion applies when it serves a 'practical purpose' — that of giving notice to the agency so that it may be the initial decision maker and create a record for subsequent judicial

review."); *see also Qingdao Sea-Line*, 766 F.3d at 1386 ("The burden of creating an adequate record lies with the interested parties, not with Commerce."). The Court declines Nagase's invitation to usurp the agency's role and rule on Nagase's proposal in the first instance.

## CONCLUSION

Commerce's Remand Determination complies with the Court's prior order and is supported by substantial evidence. No party objects to Commerce's removal of the compensation for payment expense from the general and administrative expense ratio. Although Nagase seeks to relitigate whether Commerce properly calculated the assessment rate, this Court is limited in its review to the record Nagase built and remains powerless to order Commerce to consider Nagase's procedurally defaulted claims. Commerce accurately performed the necessary mathematical calculations using the information supplied by the parties. That Nagase now regrets the information it placed on the record is not grounds to excuse it from complying with the rules of administrative exhaustion and Federal Circuit precedent. Commerce's Remand Determination is therefore **SUSTAINED**.

/s/ Stephen Alexander Vaden

Stephen Alexander Vaden, Judge

Dated:    July 30, 2024
          New York, New York